```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF MISSOURI
                    EASTERN DIVISION
```

DONNA OWENS, )
)
        Plaintiff, )
)
       vs. )    No. 4:04-CV-420 (CEJ)
)
GENERAL MOTORS CORPORATION, )
)
        Defendant. )

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of defendant General Motors Corporation for summary judgment, pursuant to Rule 56, Fed.R.Civ.P. Plaintiff opposes the motion and the issues are fully briefed.

Plaintiff Donna Owens has worked as an auto assembler for defendant General Motors Corporation (GMC) since 1985. Plaintiff alleges that she suffers from asthma, a condition that was aggravated by her exposure to tobacco smoke at work. She claims that defendant failed to accommodate her disability and that the defendant retaliated against her when she complained. Plaintiff asserts claims under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101, *et seq.*, and the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. §§ 213.010 *et seq*.

### I. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

**II. Background**

In September 1997, GMC implemented a policy that prohibited smoking in conference rooms, reception and waiting areas, classrooms, company vehicles, elevators, stairwells, hallways and lobbies. The policy also required that non-smoking sections be provided in cafeterias and dining areas. With respect to common

work areas, the policy directed employees and their supervisors to work together to reach "a mutually agreeable solution to all employees affected, consistent with General Motors [sic] traditional respect for the individual." In January 1992, GMC implemented a policy designating the administration building, the Engineering and Mezzanine areas, and department offices as smoke-free workplaces. On August 1, 2002, GMC issued a "Revision to Smoke Free Workplace Policies" in which the company repeated its earlier statement encouraging employees in common work areas to reach a mutually agreeable solution regarding smoking.

In April 2002, plaintiff worked the night shift in the Body Shop at the GMC plant in Wentzville, Missouri. She was part of a three-person team that installed rear doors on minivans. During that time, plaintiff was exposed to cigar and cigarette smoke by several of her co-workers. Plaintiff testified that exposure to the smoke gave her a headache, dryness in her mouth and throat, a sensation that she could not swallow, and made her feel as if she were drowning. On one occasion, plaintiff tried to turn on a nearby overhead fan, but a co-worker who controlled the fan told her he didn't want it on. She located a smaller fan but another co-worker unplugged it, saying he did not want the fan blowing on him.

Plaintiff testified that exposure to tobacco smoke caused her to seek treatment at the plant's medical department. On more than one occasion, plaintiff either left work or took a medical leave of absence.

On April 29, 2002, plaintiff contacted Steve Eastvold, a supervisor in the labor relations department, to complain about a recent incident involving co-worker Todd Asher who had a lit cigar in her work area. Eastvold told her he would "check into" the situation. When plaintiff reported to work on the next shift, Asher again approached her with a lit cigar. Plaintiff left the assembly line and reported the incident to the medical department and to labor relations. The medical personnel told her not to return to her position until the issue was resolved. A manager sent plaintiff to another position for the remainder of the shift, which proceeded without incident.

Plaintiff arrived at work early the following day and saw Asher smoking a cigar in their work area. She spoke with Jan Logan, superintendent of the Body Shop, and asked what "management" planned to do to resolve the situation. Logan informed plaintiff that they had decided to provide plaintiff a respirator. Plaintiff, however, declined the respirator because she was claustrophobic. When plaintiff spoke with Eastvold, he told her that both she and Asher would be transferred to different jobs. When plaintiff asked what she had done "so wrong" that she should be transferred, Eastvold told her that Asher had not "done anything wrong either." Plaintiff went to the medical department, requested a copy of her records, and left the plant on sick leave.

The following day, plaintiff attended a meeting with her supervisor Jan Logan, Dorothy Bearden of Labor Relations, Asher, and Donn Levins, a union representative. Plaintiff suggested that

Asher agree to smoke at the end of the ramp in their work area and that GMC agree to place a fan there to blow the smoke away from the work area. Levins "went off" and said that Asher could smoke anywhere he liked, including the work area, where GMC should place a fan. Plaintiff protested that a fan located in the work area would blow the smoke toward her. Plaintiff left the meeting before there was a resolution. She remained on paid sick leave from May 1 through August 12, 2002.

After plaintiff returned to work from medical leave, Asher was still working in her area. However, he smoked cigarettes instead of cigars. Plaintiff testified that cigarettes affected her less adversely than cigars, and that she coped with the situation by leaving the work area at every opportunity.

Plaintiff wrote a grievance on June 24, 2003. In the "Nature of Grievance" section plaintiff wrote, "I protest MGT rules regarding smoking at the Wentzville plant. I demand MGT and Shop Committee address my protest and make Wentzville a no smoking plant." The phrase "MGT refused to sign" is written on the form and then scratched out. Plaintiff testified that Jan Logan and Warren Ridding, the heads of her department, refused to sign the grievance on June 24th. Horton gave her a copy of her rejected grievance. However, the following day, he told her to return the form because it had been altered – he showed her that the word "HOLD" had been written on the grievance and her grievance was now at "Step One and a Half," a designation she could not locate in the union manual. The result, she said, was that her grievance could

not go forward.  Plaintiff testified that, on other occasions, union committeemen refused to write grievances for her on the smoking issue.  She attributed the committeemen's attitude to a directive from management to the union.

Plaintiff was diagnosed with asthma in October 2002.  In December 2002, she gave her supervisor Jan Logan a letter from her physician, stating that her asthma was "worsened by cigarette/cigar smoke."  In a letter to Logan on June 26, 2003, plaintiff reiterated that she had been diagnosed with asthma, and asserted that she was subjected to second-hand smoke on a daily basis.  She also alleged that other employees were intentionally harassing her by smoking around her.  On July 30, 2003, plaintiff wrote to Joe Hogan, defendant's EEO officer, requesting a reasonable accommodation.  On August 23, 2003, plaintiff submitted a letter from her physician, stating that plaintiff had moderate to severe asthma, worsened by cigarette and cigar smoke.  The letter stressed that it was important that plaintiff be "in an environment where cigarette smoke is not present because it will bring on an asthma attack."

In October 2003, debris that had been tossed in a trash can caught fire.  Plaintiff walked off the line for ten minutes.  The team leader refused to take over plaintiff's job during her absence because of the smoke.  Plaintiff went on medical leave on October 27, 2003, citing stress as the reason.  On December 10, 2003, plaintiff filed suit in the Eleventh Judicial Circuit Court (St.

Charles County), seeking an injunction pursuant to the Missouri Indoor Clean Air Act.

On March 22, 2004, after the defendant adopted a no-smoking policy for the entire Wentzville plant, plaintiff returned to work. Upon her return, she was sent to the medical department. Plaintiff testified that a physician in the department told her that he had been told to place restrictions on her that would disqualify her from working in the Body Shop. He expressed confusion about why such restrictions were necessary and offered to buy her a fan so she could remain in Body Shop. Plaintiff spoke with Kenneth Wakefield, defendant's "placement person" to ask why she had been removed from Body Shop. He told her that she was restricted from exposure to dust, fumes, and smoke. Plaintiff responded that these restrictions exceeded those imposed by her physician. Another GMC employee told her that her only restriction was that she could not work in Body Shop.

As a result of the restrictions, plaintiff was transferred to the Chassis Department and was placed on what was familiarly known as the "punishment line." Employee Ronald Thornley testified that the Chassis Department is physically demanding because the work is performed on a continuous assembly line rather than at stations, as in the Body Shop. There is also less opportunity to work overtime. Because it is less desirable, the Chassis Department is staffed with low-seniority workers and new hires. Plaintiff testified that the pace in the Chassis Department aggravated her degenerative arthritis and caused her to suffer daily physical pain. Plaintiff

ultimately filed a grievance and she was returned to the Body Shop and compensated for lost wages.

Plaintiff was prescribed Advair, an inhaler, for her asthma. She testified that she kept the inhaler with her at all times and that it gives her immediate relief. She could recall having to use the inhaler to prevent an asthma attack on only two or three occasions since October 2003. Plaintiff testified that she believed she had had between 12 and 15 asthma attacks in her life, six of which were severe.

When she is not at work, plaintiff performs household chores such as sweeping, laundry and cutting the grass. She is able to groom herself and to take care of her personal needs.

**III. Discussion**

The ADA requires an employer to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. 12112(b)(5)(A). The ADA defines "disability" as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

Defendant argues that plaintiff cannot establish that she is disabled within the meaning of the ADA. In her opposition to the

summary judgment motion, plaintiff asserts only that defendant regarded her as having an impairment. By limiting her claim in this manner, plaintiff cannot avoid summary judgment on her contention that defendant failed to accommodate her disability: Under Eighth Circuit precedent, plaintiffs claiming that they are "regarded as" disabled are "not entitled to reasonable accommodations." Weber v. Strippit, Inc., 186 F.3d 907, 917 (8th Cir. 1999).

Plaintiff would fare no better with a claim that her asthma constitutes a disability under 42 U.S.C. § 12102(2)(A). A person who is "substantially limited" in a major life activity under this provision is significantly restricted as to the condition, manner or duration under which she individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1)(ii). Numerous courts have held that individuals who are able control their asthma symptoms sufficiently to permit them to engage in normal exertion, as plaintiff admittedly can do, are not disabled within the meaning of the ADA. See, e.g., Heilweil v. Mount Sinai Hosp., 32 F.3d 718 (2d Cir. 1994); Riforgiato v. Findlex Corp., 2003 WL 21303416 at *3 (N.D. Ohio 2003) (listing cases).

Plaintiff also alleges that defendant retaliated against her in response to her complaints about smoking in the plant. The burden-shifting analysis of McDonnell-Douglas Corp. v. Green, 411

U.S. 792 (1973) applies to claims of retaliation. Buettner v. Arch Coal Sales, Inc., 216 F.3d 707, 713 (8th Cir. 2000). If plaintiff establishes a *prima facie* case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802. If defendant articulates such a reason, plaintiff must then demonstrate that defendant's reason is a pretext for discrimination. Id.; Kim v. Nash Finch Co., 123 F.3d 1046, 1056 (8th Cir. 1997). The burden of proving discrimination remains on plaintiff at all times. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515-16 (1993). Plaintiff must do more at the pretext stage than discredit defendant's reason; plaintiff must show that defendant's articulated reason is a pretext for improper motivation. See id.; see also Ryther v. KARE 11, 108 F.3d 832, 837 (8th Cir. 1997) (en banc); Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 777 (8th Cir. 1995). A plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's proffered reason is false may permit, but does not require, the factfinder to conclude that the actual reason was discrimination. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000).

In order to avoid summary judgment, a plaintiff alleging discrimination must present evidence that, when viewed in its entirety, (1) creates a fact issue as to whether the employer's proffered reason is pretextual, and (2) creates a reasonable inference that a discriminatory motive was a determinative factor

- 10 -

in the adverse employment decision.  <u>Rothmeier v. Investment Advisers, Inc.</u>, 85 F.3d 1328, 1336-37 (8th Cir. 1996); <u>see also</u> <u>Krenik v. County of LeSueur</u>, 47 F.3d 953, 958 (8th Cir. 1995). Evidence of pretext alone is not sufficient to avoid summary judgment.  <u>Ryther</u>, 108 F.3d at 837.

In order to establish a *prima facie* case of retaliation, plaintiff must show that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) a causal connection exists between the two.  <u>Heisler v. Metropolitan Council</u>, 339 F.3d 622, 632 (8th Cir. 2003).

Plaintiff identifies the transfer to the Chassis Department in March 2004 as the adverse employment action.  Defendant characterizes this transfer as a "lateral" transfer that cannot constitute an adverse action.  Defendant notes that plaintiff received the same hourly pay while in the Chassis Department.  In addition, she was awarded 90 to 120 hours of back pay upon her return to the Body Shop, presumably to compensate for the reduced overtime opportunities.  However, plaintiff testified that the work on the "punishment line" was very physically demanding and caused her a great deal of physical discomfort.  Defendant does not address whether subjecting an employee to such discomfort constitutes an adverse action.  Defendant argues only that plaintiff's brief tenure on the chassis line precludes a finding that she suffered an adverse action.  The Court believes that this is a factual determination to be made at trial.

Defendant also argues that all of plaintiff's "protected activity" occurred after she was placed in the Chassis Department, precluding her from establishing that the transfer was in response to her actions. However, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on July 26, 2002. And, on December 10, 2003, plaintiff filed suit in state court seeking an injunction pursuant to the Missouri Indoor Clean Air Act. The Court concludes that a fact-finder could reasonably conclude that defendant transferred plaintiff to the Chassis Department in response to her protected activity. Plaintiff has presented evidence to support a *prima facie* case of retaliation.

Defendant asserts that it had a legitimate nondiscriminatory reason for transferring plaintiff to the Chassis Department. Defendant contends that the evidence establishes that plaintiff was more likely to be exposed to fumes and smoke in the Body Shop than in the Chassis Department. However, plaintiff testified that the person assigned to train her in that department smoked cigarettes, thereby exposing her to an irritant specifically restricted by her physician, while purporting to protect her from fumes and other irritants that did not affect her to the same degree. The Court concludes that plaintiff has presented evidence that creates genuine disputes of material fact with regard to defendant's motivation for transferring her to the Chassis Department. Defendant's motion for summary judgment will be denied with respect to plaintiff's retaliation claim.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendant General Motors Corporation for summary judgment [#32] is **granted** only with respect to plaintiff's claim that defendant failed to accommodate her disability. The defendant's motion is **denied** with respect to the plaintiff's claim of retaliation.

**IT IS FURTHER ORDERED** that this matter remains set for jury trial on **September 26, 2005**, on plaintiff's retaliation claim.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 7th day of September, 2005.